UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JANET DENHAM, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-00246 |
| | § | |
| BARK RIVER TRANSIT, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Janet Denham filed this diversity lawsuit against Defendants Ira Wade Hudson and Bark River Transit, Inc. ("Bark River"), alleging several claims under Texas law arising from a highway collision between Hudson's tractor-trailer and Denham's pick-up truck. The parties consented to having a magistrate judge conduct all proceedings in this case. (D.E. 16 at 1; D.E. 17 at 1). Now pending is Defendants' motion for partial summary judgment (D.E. 24), to which Denham has responded (D.E. 28). For the reasons discussed further below, Defendants' motion for partial summary judgment is granted in part and denied in part, and Denham's claim regarding negligent hiring, screening, supervision, and retention is dismissed.

**I. BACKGROUND**

    **a. Complaint and Claims**

In her complaint, Denham alleges that she was driving south on Interstate 37 when Hudson, also traveling south, collided with her vehicle in a tractor-trailer and caused significant injuries to her. (D.E. 1 at 2). She raises five specific claims, including claims

of: (1) negligence against Hudson; (2) gross negligence against Hudson; (3) *respondeat superior* negligence against Bark River; (4) negligent hiring, retention, training, and/or entrustment against Bark River; and (5) gross negligence against Bark River. (*Id.* at 2-6). Denham alleges that, as a result of the accident, she suffered severe injuries to her neck, back, and other parts of her body, along with mental pain, suffering, and anguish. (*Id.* at 6). Denham seeks damages for pain and suffering, mental anguish, medical expenses, physical impairment and disfigurement, loss of wages, and loss of earning capacity. (*Id.* at 7).

      b.    **Summary Judgment Evidence**

A crash report prepared by a police officer indicated that at 7:12 a.m. on September 28, 2017, the officer was notified of an accident on the interstate. (D.E. 24-1). The officer indicated that Denham was driving in the right lane, while Hudson was driving in the middle lane. (*Id.* at 3). Hudson hit a puddle, which caused his trailer to hydroplane and collide with Denham's vehicle. (*Id.*).

Hudson testified to the following in a deposition. (D.E. 24-2). He worked part-time for Bark River when the company was involved in storm cleanup. (*Id.* at 5[17-19]).[1] If he needed to communicate with Bark River while he was driving, he would use the speaker phone function of his cell phone—a flip phone—and put it on the dashboard. (*Id.* at 7[26-27]). At the time of his accident with Denham, Hudson was completing a multi-day drive from Michigan to Corpus Christi to help clean up after Hurricane Harvey.

---

[1] Each page of deposition testimony includes four mini-pages. The number before the brackets cites the overall page, while the number inside the brackets cites the specific mini-pages.

2

(*Id.* at 8[30]). On the day of the accident, it was drizzling until about ten miles from where the accident occurred, when it began to rain severely. (*Id.* at 12[47]). Hudson was in the middle of three lanes when traffic in the right lane began to slow down. (*Id.* at 12-13[48-49]). He slowed down to around 25 or 30 miles per hour, and a car from the left lane merged in front of him. (*Id.* at 13[50]). Hudson slowly applied the brakes, but the road was covered in a severe amount of water and his trailer slid to the right. (*Id.*). Hudson felt a small bump, and he eventually stopped on the shoulder. (*Id.*). He thought that there was eight to ten inches of water on the road. (*Id.* at 14[55]). He braked lightly due to the water. (*Id.* at 14[56]). Hudson was not on his phone at the time of the accident. (*Id.* at 16[64]). He did not believe there was anything he could have done differently to avoid the accident. (*Id.* at 20 [78]).

Denham testified to the following in a deposition. (D.E. 28-6). At the time of the accident, it was raining heavily and traffic on the highway was slowing to around 30 miles per hour. (*Id.* at 5[18-19]). She previously passed Hudson to avoid the spray from his truck. (*Id.* at 5[19]). Denham did not see him again until he collided with her, and he went past her moving "pretty fast" with the truck swerving side to side. (*Id.* at 5-6[20-21]). She was almost stopped at the time of the collision and heard brakes squealing, but she did not see Hudson run into her. (*Id.* at 6[22-23]). After Denham and Hudson pulled over, Hudson let her use his phone. (*Id.* at 7[27]).

Don Vanenkevort testified to the following in a deposition. (D.E. 24-3). He was a part-owner of Bark River. (*Id.* at 2[7]). He was already in Corpus Christi on the day of the accident and called Hudson to see where he was. (*Id.* at 11[42]). It was raining

3

heavily that morning. (*Id.* at 12[45]). When he was driving a truck, he had a hands-free phone system. (*Id.* at 13[50]). He did not remember talking to Hudson shortly before the accident, but he knew Hudson had a flip phone and had to manually enter any phone number in order to make a call. (*Id.* at 14[54-55]). He agreed that it would be dangerous for Hudson to be driving the truck in heavy rain and dialing a number on his phone. (*Id.* at 15[57-58]).

Hudson's cell phone records indicate that, on the morning of the accident, he received calls from Vanenkevort at 6:54 a.m. and 7:05 a.m., and he made calls to Vanenkevort at 7:03 a.m., 7:07 a.m., and 7:17 a.m. (D.E. 28-4 at 13). At 7:09 a.m., a few minutes after the accident, Denham borrowed his phone to call her work. (*Id.*; D.E. 28-7 at 1).

## II. DISCUSSION

### a. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may

not weigh the evidence or evaluate the credibility of witnesses. *Id.* The Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Salazar-Limon v. City of Houston*, 826 F.3d 272, 274-75 (5th Cir. 2016). In doing so, the Court can credit "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

### b. Gross Negligence

Hudson argues that Denham has no evidence to support either that there was an objectively extreme degree of risk or that he subjectively knew of the risk involved in his actions that led to the crash. (D.E. 24 at 4). On the subjective prong, Hudson argues that

5

he believed he was operating the truck in a cautious manner at the time of the accident. (*Id.*).

Denham responds that there is evidence that Hudson was using his cell phone at the time of the accident, which creates a factual issue regarding both the objective and subjective prongs of the risk analysis. (D.E. 28 at 4-8). Denham identifies several facts that added to the risk, including that Hudson uses a flip phone and must manually answer the phone and make calls, which violates federal commercial vehicle law. (*Id.* at 8-9). Further, Denham contends that Hudson's use of a cell phone was the proximate cause of the collision because, due to the distraction, he failed to observe a pool of water on the road and used an improper avoidance technique by applying the brakes, which caused the trailer to hydroplane. (*Id.* at 9-12). Moreover, Denham argues that Bark River participated in the cell phone use and knew of the risk because the calls made to and from Hudson's phone around the time of the accident came from Vanenkevort, Hudson's supervisor and the co-owner of Bark River. (*Id.* at 12-15).

> In Texas, gross negligence is statutorily defined as an act or omission:
>
> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. Code § 41.001(11); *Boerjan v. Rodriguez*, 436 S.W. 3d 307, 311 (Tex. 2014). Under the objective prong, there must be more than "a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury

6

to the plaintiff." *Boerjan*, 436 S.W. 3d at 311. Under the subjective prong, the defendant must be actually aware of the risk involved, meaning that he "knew about the peril, but [his] acts or omissions demonstrated that [he] did not care." *Id.* A corporation may be grossly negligent if, among other ways, it authorizes or ratifies an agent's gross negligence. *Telesis/Parkwood Ret. I, Ltd. v. Anderson*, 464 S.W. 3d 212, 245 (Tex. App.—El Paso 2015, no pet.).

Evidence of simple negligence is insufficient to show either prong. *Forester v. El Paso Elec. Co.*, 329 S.W. 3d 832, 837 (Tex. App.—El Paso 2010, no pet.). Circumstantial evidence may prove either element, but circumstantial evidence of actual knowledge "must either directly or by reasonable inference support that conclusion." *Boerjan*, 436 S.W. 3d at 311; *Suarez v. City of Tex. City*, 465 S.W. 3d 623, 633 (Tex. 2015).

Federal regulations prohibit the use of hand-held mobile phones while driving a commercial motor vehicle. 49 C.F.R. § 392.82. Several federal district courts have concluded that evidence of cell phone use while driving a tractor-trailer is sufficient to survive summary judgment on a claim of Texas gross negligence. *See Braun v. Clean Harbors Environmental Services, Inc.*, No. 1:14-CV-524, 2016 WL 7551118 at *4-5 (E.D. Tex. Jan. 25, 2016) (citing a criminal case, *Montgomery v. State*, 369 S.W. 3d 188, 194 (Tex. Crim. App. 2012)); *Alpizar v. John Christner Trucking, LLC*, No. SA-17-CV-00712, 2019 WL 1643743 at *4-5 (W.D. Tex. Apr. 16, 2019); *Olivarez v. Get Cargo, Inc.*, No. SA-13-391, 2014 WL 12588337 at *7 (W.D. Tex. Sept. 25, 2014).

Here, there is a disputed issue of material fact regarding whether Hudson was grossly negligent by using his cell phone and whether Bark River was grossly negligent by authorizing or ratifying his actions. First, as to Hudson, the evidence indicates that he made or received several calls around the time of the accident. (D.E. 28-4 at 13). Although Hudson testified that he was not on his phone at the time of the accident, this statement has not been corroborated by other evidence, and a jury could find his testimony not credible given the volume of calls. *See Alpizar*, 2019 WL 1643743 at *5. Hudson's potential use of a cell phone is sufficient to raise a factual question regarding whether there was an extreme degree of risk of which he was subjectively aware, particularly where: (1) it was raining heavily; (2) Hudson had a flip phone rather than a hands-free system; and (3) Hudson's description of how he used the phone while driving violates federal regulations. (D.E. 24-2 at 7[26-27], 12[47]); *Boerjan*, 436 S.W. 3d at 311 (stating that circumstantial evidence can prove either element of gross negligence); 49 C.F.R. § 392.82. As to Bark River, Vanenkevort, who was a part-owner of the company and Hudson's supervisor, testified that he knew it was raining heavily and that Hudson used a flip phone, but nevertheless called Hudson on the morning of the accident. (D.E. 24-3 at 12[45], 14[54-55]). This evidence is sufficient to raise a factual question regarding whether Bark River was grossly negligent by authorizing or ratifying Hudson's cell phone use. *Anderson*, 464 S.W. 3d at 245.

Finally, the denial of Defendants' motion for summary judgment on these claims does not preclude Defendants from raising this argument in a motion under Federal Rule of Civil Procedure 50 at trial.

### c. Negligent Hiring, Screening, Supervision, and Retention

Defendants next argue that Denham cannot establish that Bark River failed to exercise due care in hiring, retaining, or supervising Hudson because there is no evidence that Bark River was aware of, or could have discovered, a risk. (D.E. 24 at 5). Further, Defendants argue that Denham cannot establish that any negligence on Bark River's part was the proximate cause of the accident because there is no evidence that the accident was foreseeable. (*Id.* at 5-6).

Denham does not respond to this argument.

Where a plaintiff "alleges ordinary (rather than gross) negligence, and the employer stipulates to its vicarious liability for its employee's negligence, a *respondeat superior* claim and [a negligent hiring, screening, supervision, or retention claim] are 'mutually exclusive' means of recovering from the employer." *See Alpizar*, 2019 WL 1643743 at *7 (citing *Sanchez v. Transportes Internacionales Tamaulipecos S.A. de C.V.*, No. 7:16-cv-354, 2017 WL 3671089 at *2 (S.D. Tex. July 20, 2017).

Here, Denham has raised no argument and submitted no evidence in support of her negligent hiring, screening, supervision, and retention claim. *See Matsushita*, 475 U.S. at 587 (stating that where the moving party demonstrates an absence of evidence supporting a claim, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist). However, regardless of any waiver, Bark River does not dispute that Hudson was acting in the course and scope of his employment at the time of the accident. (*See* D.E. 24 at 1-2). Accordingly, as in *Alpizar*, if Hudson was negligent and his negligence proximately caused Denham's injuries, Bark

River would be vicariously liable for that negligence regardless of its hiring, training, supervision, or retention of him as an employee. *Alpizar*, 2019 WL 1643743 at *7. Further, if Hudson was not negligent, then any negligence by Bark River regarding his hiring, training, supervision, or retention could not have proximately caused Denham's injuries. *Id.* Thus, summary judgment is appropriate on Denham's negligent hiring, screening, supervision, and retention claim because it is mutually exclusive with her *respondeat superior* claim.

### III. CONCLUSION

Accordingly, Defendants' motion for partial summary judgment (D.E. 24) is GRANTED in part and DENIED in part, and Denham's claim regarding negligent hiring, screening, supervision, and retention is DISMISSED.

ORDERED this 3rd day of October, 2019.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE